**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**CHARLES A. BLASCO,**

                    Plaintiff,                5:13-cv-576
                                                       (GLS)

           v.

**COMMISSIONER OF SOCIAL
SECURITY,**

                    Defendant.
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Law Offices of Steven R. Dolson | STEVEN R. DOLSON, ESQ. |
| 126 North Salina Street, Suite 3B | |
| Syracuse, NY 13202 | |
| | |
| **FOR THE DEFENDANT:** | |
| HON. RICHARD S. HARTUNIAN | ELIZABETH D. ROTHSTEIN |
| United States Attorney | Special Assistant U.S. Attorney |
| 100 South Clinton Street | |
| Syracuse, NY 13261 | |
| | |
| Steven P. Conte | |
| Regional Chief Counsel | |
| Social Security Administration | |
| Office of General Counsel, Region II | |
| 26 Federal Plaza, Room 3904 | |
| New York, NY 10278 | |

**Gary L. Sharpe
Chief Judge**

# MEMORANDUM-DECISION AND ORDER

## I. Introduction

Plaintiff Charles A. Blasco challenges the Commissioner of Social Security's denial of Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), seeking judicial review under 42 U.S.C. § 405(g). (Compl., Dkt. No. 1.) After reviewing the administrative record and carefully considering Blasco's arguments, the court affirms the Commissioner's decision and dismisses the complaint.

## II. Background

On December 13, 2010, Blasco filed applications for DIB and SSI under the Social Security Act ("the Act"), alleging disability since June 1, 2006. (Tr.[1] at 83-84, 184-202.) After his applications were denied, (*id.* at 85-92), Blasco requested a hearing before an Administrative Law Judge (ALJ), which was held on February 16, 2012, (*id.* at 26-81, 93-94). On March 30, 2012, the ALJ issued an unfavorable decision denying the requested benefits which became the Commissioner's final determination upon the Social Security Administration Appeals Council's denial of review. (*Id.* at 1-23.)

---

[1] Page references preceded by "Tr." are to the Administrative Transcript. (Dkt. No. 8.)

Blasco commenced the present action by filing his complaint on May 17, 2013 wherein he sought review of the Commissioner's determination. (Compl.) The Commissioner filed an answer and a certified copy of the administrative transcript. (Dkt. Nos. 7, 8.) Each party, seeking judgment on the pleadings, filed a brief. (Dkt. Nos. 11, 15.)

### III. Contentions

Blasco contends that the Commissioner's decision is tainted by legal error and is not supported by substantial evidence. (Dkt. No. 11 at 3-10.) Specifically, Blasco claims that the ALJ failed to: (1) properly assess his credibility; and (2) follow the treating physician rule. (*Id.*) The Commissioner counters that the appropriate legal standards were used by the ALJ and his decision is also supported by substantial evidence. (Dkt. No. 15 at 5-16.)

### IV. Facts

The court incorporates the factual recitations of the parties and the ALJ. (Dkt. No. 11 at 1-2; Dkt. No. 15 at 2; Tr. at 12-19.)

### V. Standard of Review

The standard for reviewing the Commissioner's final decision under

42 U.S.C. § 405(g)[2] is well established and will not be repeated here. For a full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

## VI. Discussion

### A. Credibility Determination

First, Blasco contends that the ALJ failed to properly assess his credibility. (Dkt. No. 11 at 3-6.) In particular, Blasco argues that the ALJ's failure to follow the required two-step inquiry to evaluate his subjective complaints requires remand. (*Id.* at 3-4.) Further, Blasco claims that the ALJ failed to adequately address the required factors under the regulations, and improperly compared the consistency of Blasco's statements with the ALJ's own residual functional capacity (RFC)[3] finding. (*Id.* at 4-5.) Lastly,

---

[2] 42 U.S.C. § 1383(c)(3) renders section 405(g) applicable to judicial review of SSI claims. As review under both sections is identical, parallel citations to the regulations governing SSI are omitted.

[3] A claimant's RFC "is the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). In assessing a claimant's RFC, an ALJ must consider "all of the relevant medical and other evidence," including a claimant's subjective complaints of pain. *Id.* § 404.1545(a)(3). An ALJ's RFC determination must be supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g). If it is, that determination is conclusive and must be

Blasco asserts that it is not clear from the ALJ's decision if he considered only Blasco's substance abuse in assessing Blasco's credibility, or if the ALJ improperly segregated out the effects of Blasco's substance use disorders when determining his RFC. (*Id.* at 6.) The court disagrees.

Once the ALJ determines that the claimant suffers from a "medically determinable impairment[] that could reasonably be expected to produce the [symptoms] alleged," he "must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the extent that the claimant's [subjective] contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry." *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (internal quotation marks and citations omitted). In performing this analysis, the ALJ "must consider the entire case record and give specific reasons for the weight given to the [claimant's] statements." SSR 96-7p, 61 Fed. Reg. 34,483, 34,485 (July 2, 1996). Specifically, in addition to the objective medical evidence, the ALJ must consider the following factors: "1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness, and

---

affirmed upon judicial review. *See id.*; *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms." *F.S. v. Astrue*, No. 1:10-CV-444, 2012 WL 514944, at *19 (N.D.N.Y. Feb. 15, 2012) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi).

Here, the ALJ found that Blasco "alleges disability due to schizoaffective disorder and acid reflux. However, [Blasco's] statements concerning the intensity, persistence and limiting effects of his symptoms are not credible to the extent that they are inconsistent with the [RFC] assessment." (Tr. at 14.) The ALJ then went on to explain that Blasco's "activities are suggestive of greater abilities than . . . alleged." (*Id.* at 14-15.) The ALJ pointed out that Blasco is able to care for his personal hygiene, cook, clean, help his daughter with child care of his granddaughter, mow the lawn, drive, use public transportation, and manage money. (*Id.* at 14-15, 40, 47.) Blasco is also able to work out with friends, play disc golf, take guitar lessons from a friend, attend yoga classes, go out to eat once a week with his girlfriend, watch television, and read. (*Id.* at 15, 48-50, 52, 54, 277, 377.) In addition, treatment notes indicate that Blasco had taken steps to pursue finishing his college degree. (*Id.* at 15, 401, 436, 489.) Further, the ALJ noted that Blasco's treatment

6

records document his improvement with medication and therapy. (*Id.* at 15-16, 337-55, 481-96.) Additionally, the ALJ considered Blasco's substance abuse and criminal history, as well as inconsistencies in Blasco's statements. (*Id.* at 16, 35-37, 42.) Finally, the ALJ considered the opinion evidence of record, including that of substance abuse counselor Mary Nordone that Blasco would benefit from job training and was ready for job placement, and consulting examiner Dennis Noia that Blasco could perform the mental activities required by unskilled work. (*Id.* at 16-17, 264-65, 434-37.)

Blasco is correct in pointing out that the first step of the credibility analysis requires the ALJ to determine whether the claimant has medically determinable impairments that could reasonably be expected to produce the symptoms alleged. (Dkt. No. 11 at 3-4); *see* 20 C.F.R. § 404.1529(a)-(b). The Second Circuit has held that remand is required where the court "is unable to discern whether the ALJ found that: (1) [claimant's] contentions . . . are not reasonably consistent with those medical conditions from which []he suffers; or (2) [claimant's] contentions . . . are consistent with those medical conditions, but the intensity and persistence []he identifies are unsubstantiated and h[is] subjective allegations alone are

7

not credible." *Meadors v. Astrue*, 370 F. App'x at 184. Here, however, there is no such confusion, as it is clear from the ALJ's decision that he found that, although Blasco suffers from schizoaffective disorder, which could reasonably be expected to produce the symptoms alleged,[4] Blasco's subjective allegations as to the intensity and functionally limiting effects of his symptoms are not fully credible. (Tr. at 12-14.)

Blasco argues that the ALJ erred in considering medical findings when discounting his testimony regarding the functional effects of his symptoms. (Dkt. No. 11 at 4.) On the contrary, "[o]bjective medical evidence . . . is a useful indicator to assist [the Commissioner] in making reasonable conclusions about the intensity and persistence of [a claimant's] symptoms and the effect those symptoms . . . may have on [his] ability to work." 20 C.F.R. § 404.1529(c)(2). In keeping with the regulations, in addition to the objective medical evidence, the Commissioner must "consider all of the evidence presented, including information about [a claimant's] prior work record, . . . statements about [his] symptoms, evidence submitted by [his] treating or nontreating source,

---

[4] Blasco testified that he cannot work because of social anxiety, memory loss, attention problems, and daily hallucinations. (Tr. at 38, 57-59.)

and observations by [Social Security Administration's] employees and other persons." *Id.* § 404.1529(c)(3). Here, the ALJ did just that. (Tr. at 14-18.)

Although the ALJ did not undertake a step-by-step exposition of the factors articulated in 20 C.F.R. § 404.1529(c), "[f]ailure to expressly consider every factor set forth in the regulations is not grounds for remand where the reasons for the ALJ's determination of credibility are sufficiently specific to conclude that he considered the entire evidentiary record." *Judelsohn v. Astrue*, No. 11-CV-388S, 2012 WL 2401587, at *6 (W.D.N.Y. June 25, 2012) (internal quotation marks and citation omitted); *see Oliphant v. Astrue*, No. 11-CV-2431, 2012 WL 3541820, at *22 (E.D.N.Y. Aug. 14, 2012) (stating that the 20 C.F.R. § 404.1529(c)(3) factors are included as "'examples of alternative evidence that may be useful [to the credibility inquiry], and not as a rigid, seven-step prerequisite to the ALJ's finding'" (quoting *Snyder v. Barnhart*, 323 F. Supp. 2d 542, 546 (S.D.N.Y. 2004))). Here, the ALJ explicitly acknowledged consideration of the 20 C.F.R. § 404.1529 factors, (Tr. at 14), and it is evident from his thorough discussion that his credibility determination was legally sound. *See Britt v. Astrue*, 486 F. App'x 161, 164 (2d Cir. 2012) (finding explicit mention of 20 C.F.R. § 404.1529 and SSR 96-7p as evidence that the ALJ used the

9

proper legal standard in assessing the claimant's credibility).  Further, it is clear from the ALJ's detailed credibility analysis that his reference to consistency with the RFC determination was merely an indication that the RFC determination incorporated those findings.  (Tr. at 14-18.)

    Blasco argues that the ALJ erred in finding that factual inconsistencies "diminish [Blasco's] overall credibility" because he testified that he experiences "memory issues."  (Tr. at 16; Dkt. No. 11 at 5.)  However, the ALJ permissibly considered "inconsistencies in the evidence and the extent to which there [were] conflicts between [Blasco's] statements and the rest of the evidence."  20 C.F.R. § 404.1529(c)(4).  Specifically, the ALJ considered inconsistent explanations as to why Blasco left his last place of employment, and inconsistent statements about Blasco's physical impairments.  (Tr. at 14, 16.)  Blasco testified to the ALJ that he was fired from his most recent employer because he could not "keep up" due to his impairments, but he told Dr. Noia that he quit working when he moved, and, on a form submitted to the Social Security Administration, Blasco reported that he was laid off when the company changed owners.  (*Id.* at 14, 34, 217, 434.)  Further, Blasco told consultive examiner Kalyani Ganesh that he is physically healthy and that medication

helps with his acid reflux, however, he reported on a function report submitted to the Social Security Administration that he requires hearing aids, has pain in his joints, and suffers from hip soreness. (*Id.* at 16, 242-43, 438.) Standing alone, the purported "inconsistencies" do not create an independent basis for finding Blasco not credible. However, taken as a whole, the ALJ's credibility determination is not "patently unreasonable." *Pietrunti v. Director, Office of Workers' Comp. Programs*, 119 F.3d 1035, 1042 (2d Cir. 1997) ("Credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are patently unreasonable." (internal quotation marks and citation omitted)).

Turning to the ALJ's consideration of Blasco's substance abuse, as Blasco concedes, substance abuse is one of many factors an ALJ may consider when evaluating a claimant's credibility. (Dkt. No. 11 at 6); *see Arrington v. Astrue*, No. , 2011 WL 3844172, at *13 (W.D.N.Y. Aug. 8, 2011) (holding that, although the ALJ may consider a claimant's criminal history and substance abuse as factors in assessing the claimant's credibility, they cannot be the only factors considered). According to Blasco, however, rather than considering his substance abuse in terms of his credibility, the ALJ actually considered whether or not Blasco's drug

11

abuse is a contributing factor material to a finding of disability, without considering whether Blasco would be disabled if he stopped using drugs or alcohol. (Dkt. No. 11 at 6.) Under the regulations, in order for the ALJ to address whether drug addiction or alcoholism is a contributing factor material to making a determination of disability, the ALJ must first find the claimant disabled, and then determine whether the claimant would still be disabled if he stopped using drugs or alcohol. *See* 20 C.F.R. § 404.1535(a), (b)(1). In this case, the ALJ concluded that Blasco is not disabled, and, thus, he did not address whether Blasco's drug and alcohol use may be a contributing factor material to the determination of disability. The ALJ concluded that "while [Blasco] testified that he was primarily unable to work due to social anxiety and memory problems . . . ongoing polysubstance abuse [cannot be ruled out] as a factor or catalyst with regard to some of these issues." (Tr. at 16.) Although this language could suggest that the ALJ improperly segregated out the effects of Blasco's substance use disorders when determining his RFC in the first instance, the ALJ's discussion of the entirety of the evidence of record—which suggests that Blasco was capable of performing unskilled work—and his reliance on the opinions of Dr. Noia and substance abuse counselor

12

Nordone, makes it clear that the ALJ considered the ill effects of Blasco's substance use on his functional abilities when determining that Blasco was not disabled. (*Id.* at 14-18.)

**B.     Treating Physician Rule**

Blasco also claims that the ALJ failed to follow the treating physician rule. (Dkt. No. 11 at 6-10.) According to Blasco, the ALJ's reasoning for discounting the co-signed opinion of treating psychiatrist David Kang[5] and nurse practitioner Scott Burnside triggered the ALJ's duty to re-contact Dr. Kang. (*Id.* at 8.) Further, Blasco argues that, even if the opinion of Burnside is not that of an acceptable medical source, his opinion was entitled to more than "little weight," and the ALJ erred in placing too much emphasis on a single Global Assessment of Functioning (GAF)[6] score. (Tr. at 17; Dkt. No. 11 at 9.) The Commissioner counters, and the court agrees, that the ALJ properly evaluated the medical opinions of record, and his decision to discount the opinion of Dr. Kang and Burnside is supported

---

[5] Blasco's brief mistakenly refers to Dr. Kang as "Dr. Kahn." (Dkt. No. 11 at 7-8; Tr. at 342, 348, 355, 486, 491, 496, 506.)

[6] The GAF scale "ranks psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." *Pollard v. Halter*, 377 F.3d 183, 186 n.1 (2d Cir. 2004).

13

by substantial evidence.[7] (Dkt. No. 15 at 11-16.)

Controlling weight will be given to a treating source's opinion on the nature and severity of a claimant's impairments where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(c)(2); *see Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). When a treating source's opinion is given less than controlling weight, the ALJ is required to consider the following factors: the length, nature and extent of the treatment relationship; the frequency of examination; evidentiary support offered; consistency with the record as a whole; and specialization of the examiner. 20 C.F.R. § 404.1527(c)(2)-(6). The ALJ must provide "'good reasons' for the weight given to the treating source's opinion." *Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011) (citations omitted). "Nevertheless, where the evidence of record permits [the court] to glean the rationale of an ALJ's decision," it is not necessary that the ALJ "have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or

---

[7] "Substantial evidence is defined as more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion." *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (internal quotation marks and citations omitted).

insufficient to lead him to a conclusion of disability." *Id*. (internal quotation marks and citation omitted).

Here, the ALJ gave "little weight" to the opinion of Dr. Kang and nurse practitioner Burnside that Blasco suffers marked restrictions of activities of daily living and extreme difficulty in maintaining social functioning. (Tr. at 17, 502-06.) The ALJ highlighted Dr. Kang's notation that he was the "collaborating physician" and Burnside was the primary treatment provider. (*Id.* at 16, 506.) The ALJ explained that he discounted this opinion because it was inconsistent with Blasco's treatment records, the nature of Dr. Kang's treatment relationship with Blasco was unclear, and the opinion rated Blasco's current GAF as sixty-five, indicating only mild symptoms.[8] (*Id.* at 16-17.) Thus, the ALJ considered relevant factors under the regulations for evaluating a medical opinion. *See* 20 C.F.R. § 404.1527(c)(2), (4).[9] Contrary to Blasco's argument, (Dkt. No. 11 at 8),

---

[8] A GAF score between sixty-one and seventy reflects a person with "'[s]ome mild symptoms (e.g. depressed mood or mild insomnia) OR some difficulty in social, occupational, or school functioning . . . but [who is] generally functioning pretty well, has some meaningful interpersonal relationships.'" *Kohler v. Astrue*, 546 F.3d 260, 262 (2d Cir. 2008) (quoting Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed., Text Rev. 2000)).

[9] As Blasco concedes, as a nurse practitioner, Burnside's opinion is not entitled to controlling weight. *See* SSR 06-03p, 71 Fed. Reg. 45,593, 45,594 (Aug. 9, 2006); *see* 20 C.F.R. § 404.1513(a), (d)(1); *Crysler v. Astrue*, 563 F. Supp. 2d 418, 434-35 (N.D.N.Y. 2008). Further, the ALJ's explanation that the restrictive opinion is inconsistent both internally, and with the other evidence of record, is a sufficient basis for discounting the opinion of an "other

15

the ALJ was under no duty to re-contact Dr. Kang to obtain clarification of his treatment relationship, as there are no obvious gaps, and the record presents "a 'complete medical history.'" *Rosa v. Callahan,* 168 F.3d 72, 79 n.5 (2d Cir. 1999) (quoting *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996)). Here, the ALJ had before him treatment records of Dr. Kang and Burnside, along with the opinions of Dr. Noia, substance abuse counselor Nordone, and non-examining review psychiatrist E. Kamin. (Tr. at 264-65, 337-61, 434-37, 456-59, 481-96.) The administrative record also contains Blasco's prison health records, which include mental status examinations. (*Id.* at 291-335.)

Finally, Blasco's argument that the ALJ "places wholly too much emphasis on a single GAF score" is without merit. (Dkt. No. 11 at 9.) Although the ALJ considered that the opinion completed by Dr. Kang and Burnside indicated Blasco's GAF score was sixty-five, he also considered the entirety of Blasco's treatment notes, which indicate that, over the course of his treatment, Blasco's symptoms steadily improved and his GAF scores raised. (Tr. at 15-16.) In fact, Dr. Kang's most recent treatment

---

source" as well as well as that of an "acceptable medical source." *See* SSR 06-03p, 71 Fed. Reg. at 45,595.

16

note of record indicates that Blasco's GAF score was seventy and he reported experiencing only "minor or occasional symptom interference," as his medication was working effectively. (*Id.* at 492-93.) Thus, the court is satisfied that the ALJ properly considered all of the evidence available to him in weighing this opinion. In addition, it is important to note that the ALJ did not discount the opinion of Dr. Kang and Burnside wholesale, but rather concluded that Blasco suffers some nonexertional limitations based on their opinion. (*Id.* at 17.) Ultimately, the ALJ's decision to afford "little weight" to their opinion is supported by substantial evidence. (*Id.* at 16-17.)

## C.     Remaining Findings and Conclusions

After careful review of the record, the court affirms the remainder of the ALJ's decision as it is supported by substantial evidence.

## VII.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and Blasco's complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

July 31, 2014
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court